Next case, Abdoulai Bah v. United States Next case, Abdoulai Bah v. United States May it please the Court, Gabby Belzal of Kirkland & Ellis, on behalf of Appellant Abdoulai Bah, I'd like to reserve two minutes for rebuttal. Done. This case is about whether Mr. Bah can recover the damages he suffered when the government seized his life savings for over two years, even though he was never convicted of, let alone charged with, any crime. I have three points I'd like to address for the Court today. First, the plain text of 2680C covers Mr. Bah's claims. 2680C rewaives sovereign immunity for any claim based on injury or loss of property while in the possession of law enforcement. That's exactly what Mr. Bah pled here. Well, you want to give us a highlight of what the other, give us just a snip and tell us what the other two are and then we'll go through them one by one? Sure. My second point is that context confirms that plain text reading. I want to talk about the original waiver of sovereign immunity in 1346B1 and also the statutory context. And then my third point is that the government's concerns about swallowing the detention exception and opening the floodgates are misplaced. Okay. Let's go ahead with the 2860C points you were starting with. It does seem like floodgate swallowing is not just a policy concern, it's a textual concern. Because when I look at 2860C, your argument would seem to suggest that we should be reading loss of goods, merchandise, or property as loss of the use of goods, merchandise, or property. I have two problems with that. The first one is, well, any detention involves loss of use. And so the word detention in the second line becomes irrelevant. And secondly, it doesn't say loss of use. It says loss of the goods or property themselves. So could you give us your position on those? Certainly. So to your second point, it doesn't say loss of use, but equally the statute doesn't say permanent loss. And so every time an individual suffers the seizure of their property, they are losing use of that property. Okay. I've looked, and there are multiple other places in the U.S. Code where Congress says loss of use. And often it says loss of the goods or loss of use of the goods. So sometimes Congress has separated those two out as different headings of damages, and they didn't do that here. That's true. In 1346b-1, which is the original waiver of sovereign immunity, Congress used the phrase injury or loss of property to refer to injuries suffered by the plaintiff and not injuries actually to the property. By contrast, the government's reading here would insert words to the statute. It doesn't name the plaintiff in 1346b. You say that in your brief, but it just says injury or loss of property. What's named is the injury to the property. Nowhere here does it talk about the claimant or the plaintiff in 1346b. So you're taking that as a premise which actually needs to be shown rather than just assumed. So it's not a point contested by the government, but certainly courts have interpreted that phrase in 1346b-1 to encompass injuries suffered by the plaintiff, property injuries suffered by the plaintiff. Other courts have said that, but I don't see a textual basis for it. There's another phrase in 2680 that I think is helpful, and it says that we're dealing with the injury or loss of property while in the possession of an officer. How is Mr. Baugh's cash injured or lost while in the possession of a customs officer? So the injury is to Mr. Baugh and his property rights. He suffers an injury to those property rights when his property is in the possession of the government. Specifically to the words while in the possession, we think it does two things in the context of the statute. So first of all, it refers to the property and it shows who's causing the harm. In other words, the harm is caused when the government is in the possession of the property, but it also limits the scope of the rewaiver. So, for example, you can imagine a situation where Federal and State authorities work together and there's a seizure of property by State authorities and it passes into the hands of the Federal government or vice versa. And while in the possession of the government, in that case, does limit the scope of the rewaiver. But if the property we're talking about were a laptop and it were misplaced and it couldn't find it, that would be lost while in the possession. If it were dropped and broken, that would be, you know, injured while in the possession. How is Mr. Baugh's cash, his property, lost or injured while in the possession of these officers? So it's lost to him while it's in the possession of the government, but he also suffers an injury to his property rights in that the government has seized his property. It's phrased as injury to, it's injury of the goods. It's not injury of Mr. Baugh. Your reading of injury doesn't work. And then we should read goods in the same way we read injury. Sorry, loss. Loss of the goods. The goods were lost. The property was lost. So it doesn't say based on injury to Mr. Baugh, injury to the plaintiff, injury to the owner. It's injury to the goods. Respectfully, Your Honor, we think that injury serves a simple function, which is that it ties the injury suffered to the property. Exactly. It ties it to the property. I think that's the point of the questioning you're getting. The preposition of directs you to what was injured. Was the property injured? In this case, was the money injured? The money wasn't injured. Mr. Baugh was injured, but the money wasn't injured. So if Congress had wanted to say, if you're injured, plaintiff, because you're deprived of the use of your property, it could have said that. But it didn't say that. It said, if your goods are injured, that's what this is all circling around. You've got to answer that point. How textually do we get from injury of the goods to injury to the plaintiff because of deprivation of the goods? How do we make that leap? Right. So I think, equally, Congress, if it had wanted to specifically reference physical harm to the property, it could have used the words injury to goods, and this might be a different case. Or it could have said physical injury, or it could have said damage or destruction, which are words that we know Congress knew how to use because it used them in the legislative history. Specifically on injury of goods, both sides here agree. I think that there has to be a property-related injury. So, for example, if Mr. Baugh had been – That's good. What's the property-related injury? What's the injury related to this property? We understand. We get it that he had injuries. There was an opportunity cost that he had to bear because he didn't have the money, and he lost business and things like that. So you don't have to persuade us about the facts. We're just trying to deal with this because it sounds like what you're really trying to say is if there's injury to other stuff, there's injury to other goods, there's injury in the sense that he had a business and that business was damaged, then that's enough. And that's where I'm getting a little hung up, too. I don't understand how we get from injury of these seized goods to these consequential damages, which by definition are not injuries to the property that was seized and in the possession of the government. This is injury either to him personally or to other goods. How do we read other goods or Baugh into the statute? So the injury that he suffers in this instance would be the conversion or the trespass to chattels occasioned by the government's seizure of his property. Whether Mr. Baugh or any other plaintiff could prove damages down the road, you know, I think is a question on the merits, but for the jurisdictional inquiry, all a plaintiff has to do is plead an injury and a tort recognized under state law in order to plead a claim under the FTC, along with various other requirements. Wait, you're saying any trespass to chattels is actionable here, but then that goes back to swallowing up detention because any trespass to chattels is detention of the chattels. What Judge Jordan is pointing out is for this to be meaningful and not to swallow up detention, this has to be a subset that is focused on loss of goods or injury of goods. But you're now resorting to torts that are present in every single case and which would swallow up. And moreover, when Congress, I mean, I've looked and there are like 18 statutes that use the phrase consequential damages as a specific hitting of damages. There are a number of them that speaks more generally of making economic loss compensable, sometimes listing loss of earnings, consequential damages, loss of profits, other things like that. But this statute is focused on the harm to these goods, to this cash. I don't have a problem with having cash under this heading. So how is it that when you resort to the state law torts, you're not swallowing up detention and reading in languages that isn't there? Respectfully, Your Honor, when Congress wanted to limit the scope of re-waivers or exclude certain categories of damages under the FTCA, it spoke clearly. So, for example, Congress very clearly excluded punitive damages from recovery under the FTCA. And Congress also carved out certain requirements that plaintiffs have to meet to take advantage of the re-waiver of 26 ADC. That's 26 ADC 1 through 4. But there's no textual indication on the face of the statute that Congress was concerned with limiting the recovery or the type of plaintiffs who could take advantage of 26 ADC through the words injury or loss specifically. It's not about the plaintiff. It's about the goods. So it's about the goods in the sense that there is a harm to the plaintiff when their goods are seized. You keep coming back to the harm to the plaintiff, but that's not what the text says. The text recognizes a harm to the plaintiff by allowing pre-judgment interest. Okay? You know, that's a different beast. But this 26 ADC focuses on the injury or loss to the goods. How can you make this injury to the goods without bringing the plaintiff in there when the plaintiff is not mentioned there or in 1346B1? So I think a very helpful aspect of the statute is any claim based on injury or loss of goods. The words based on there encompass claims other than damage or loss of the property itself. Again. What's the language you're relaying? The based on? Is that the operative thing in that reading? Is that where you're laying your emphasis? Right. So based on. I think any claim is also helpful. So are injury or loss, which are expansive words. But all of those elements of the statute certainly are features that indicate that when Congress drafted the statute, it intended it to have a broad reading. Have you found other statutes, places where any claim based on suggests such a broad reading has been taken as such a broad reading? Where should we look to read it that broadly? So the Supreme Court and this court have noted that any, specifically in the context of these 26 ADC exceptions, does have a broadening construction. So for the Supreme Court, that was Ali, and that was Pellegrino for this court. And it is broad. Got that. What makes it based on loss? How does that broaden the notion of loss or injury? So you could imagine Congress saying any claim for injury or loss, for example, and using other specific words to make clear that the injury would be specifically for damage to the property. That's why we're asking these questions, because they didn't use those words. Right. Right. Exactly. And so the words based on, I think, are broader than that alternative reading, which is any injury for. Going along with the based on argument, how was Mr. Baugh's property, his money, lost or injured? He suffered a loss. No, no, no. The property. How was it lost or injured? The property itself wasn't. There's no allegation that the property itself was damaged in any way or that it was actually lost by the government. That's true. And your position is, in your reply brief, you say the government's contorted reading of Section 26 AC is rife with absurdities. What is absurd about government choosing to say, look, if we wrecked your property, we'll pay you, but that's it? Where's the absurdity there? Your Honor, I just want to make sure. You're on our time now. Okay, great. So there's no reason on the face of the statute to think that the type of injury suffered when the government scratches your car when they seize it is any greater than the injury suffered when they seized that car. When you say that's true, why should the government choose to allow recovery for this type of injury and not that type of injury? That's what sovereign immunity waivers are all about. By definition, sovereign immunity is unfair. It's not fair that the government could come in and do something terrible to you and say, I'm the king, so what? But that's what sovereign immunity is, and the waivers of sovereign immunity are the only thing that ameliorate some of that unfairness. And Congress has done that over the years. In fact, CAFRA is a response to COSAC in a sense that there was something unfair going on. But we've said sovereign immunity waivers have to be construed strictly, and that's why you're getting the questions you're getting. So other than saying, well, that's just not fair, which doesn't have a lot of traction because sovereign immunity, as I say, I believe, is inherently unfair, what else do you have to say it's an absurd line to draw for the government to say, if we wreck your property, we'll make you whole for that? But that's it. Where's the absurdity in that line? Certainly, it's not reflected in the plain text of the statute. But also, the goal of CAFRA was when people's property was seized, Congress wanted to make people whole. And one of the ways of making people whole, certainly, is when the government damages your property and the government pays you for that damage. Here, and for other people whose property has been seized, there's also other damages that arise when the government seizes your property. True, true enough. Anything else? Anything else? Okay. Thanks very much, Ms. Belzo. We'll have you back on rebuttal, and we'll hear from Mr. Jones. Good morning, and may it please the court. I'm Landon Jones on behalf of the United States. This court should affirm the district court's dismissal because the text, structure, and history of CAFRA all show that Congress intended to waive sovereign immunity, when we're talking about claims arising from detention, only for claims based on injury or loss of the seized property itself. Well, can you get right to the point that I ended with, Ms. Belzolan, which is I take it from their briefing, their position is Congress was trying to do something with CAFRA. There was a strong sense that the government was abusing people, and it had to stop. And so they were cutting back on the detention exception, and they intended to cut back on it, and they used some pretty broad language to cut back on it. And it doesn't do much for a businessman like Mr. Baugh to have his cash taken and then X number of years later be told, yay, here's your cash. Sorry we destroyed your life, which, according to the allegations, is what happened. Oh, and we didn't spend a nickel of it. You get every penny back. But we did destroy your business. We did destroy your life. That there's something inherently weird and absurd about that. If Congress was trying to fix the problem of government abuse, they sure left a gaping hole here. You know, what's the response? So in CAFRA, Congress addressed a wide variety of concerns relating to forfeiture. And the bulk of those reforms really addressed the forfeiture process itself and procedural and due process protections for an individual in a forfeiture proceeding. With respect to the FTCA, Congress was focused on a specific perceived injustice that had been identified by the Supreme Court in its earlier opinion in COSAC. Because in COSAC, what the court identified there was there can be an individual who prevails in a forfeiture proceeding. But then at the end of that proceeding, they were returned a damaged or beaten up item that was theirs. And they were left without a remedy. And the Supreme Court recognized that as an unjust result. And the Supreme Court said just what you were saying a moment ago, Judge Jordan, which is that, well, this is the statute. Sovereign immunity can be tough. If you want to change it, talk to Congress. And that's basically what happened is that Congress set about remedying that specific unfair result. But beyond that. When you say that unfair result, because part of what I guess we're arguing about here is we've been very textual. But part of what we're trying to do is understand from the text what Congress is trying to do. And I hear Mr. Baugh's counsel saying they were trying to get the government to knock it off when it came to bad actions. And it's not just depriving people, like just hurting the property. It's injuring people by wrongfully taking stuff. There should be some consequence to that. I think I take that to be their argument. Yeah, if you seize a person's, assume you seized the Skipper and Gilligan's minnow. And you didn't take good care of it and it sunk. That clearly everybody agrees that's within it. But if you seize it and you keep it in pristine condition for five or six years. And then you give it back to them. And they never get to take another three-hour tour. You've wrecked their business. You've wrecked their lives. You've destroyed something they might have taken years to build up. Does it really make sense that Congress meant to say, oh, well, they gave it back to you. The boat's good. You have no recourse. Is that what Congress was trying to get at when they passed CAFRA? Or is there enough given the joints here that if you look at any claim and you looked at based on and you looked at some of these other words, you could say, yeah, that's what Congress was trying to remedy. Right, so two points there. The first is that the Supreme Court in COSAC talked about the general purposes of the exceptions to the FTCA, including actually the detention exception, which was at issue there. And two of the rationales, two of the driving forces for why there are exceptions is, one is you have this set of important governmental functions that Congress wanted to insulate from the possibility of future liability so that those functions can be performed without the specter of liability. And a second important consideration was to avoid what they've described as, I think, excessive or speculative damage claims. And those are exactly the types of claims you might have from a kind of loss of use claim like this. So it exactly aligns with those underlying rationales for FTCA exceptions. Is it speculative to say, take the hypothetical I gave you. The business is taking people on charter tours on a boat. You seize the boat, you've taken the only asset that makes the business run. What's speculative about saying you've seized the only asset that's the money generated for the business? You destroy the business. There's no guesswork about that. You get it, you take it, you keep it for three, four years, the business is gone. Is that a speculative outcome or is that something Congress would have wanted to say, yeah, that's just what we're trying to stop? I think that broad category, yes. I mean, that is the type of claim that is subject to speculative damages. And what's more, I think in the fact of currency, Congress did address what is effectively a loss of use claim for currency, but it did it separately. It did that in 2465 because every single property owner who prevails in a forfeiture proceeding under the regular forfeiture provisions and is subject to 2465, they have been deprived of the loss of use of their property during the period of detention. And you could say wrongfully. But what Congress said for currency is, well, first of all, like any other property, you get your attorney's fees and your costs, and of course, fundamentally, you get your property back. But additionally, for currency, you get a measure of what essentially amounts to prejudgment interest. It's written more in terms of disgorgement of the interest the government received during that time. But that's what Congress determined was the fair remedy for being deprived of currency during the period of detention. And it's only when that kind of fundamental predicate for prevailing in a forfeiture proceeding, which is that you get your property back, when that can't be fulfilled because the property has been injured or damaged or lost during the government's possession, that's when you have these other remedies from 2680C, they come into play. And then you can sue for, then you have an injury or loss of your property while it's in the possession of the government, and you are then within the FTC and you can bring a claim. And that makes sense. They fit together very nicely. They dovetail to address what Congress had in mind there. And you can also see if you... There are some cases that talk about loss of use of property. There's an old Southern circuit case, Preston, and there are some other ones that deal with that. Should they have any traction while we're trying to understand this statute? I don't think that that Preston case really has any traction on the interpretation of the CAFR rewaiver. That might have some application to the kind of the secondary prejudgment interest point at issue here. But it doesn't inform at all what we should be thinking about. I mean, it's true on the loss of interest stuff. I think the district court looked at antitrust cases and reference to Preston and things like that. But does that inform at all an understanding that, hey, if there's a loss of use and there is an opportunity cost that's been imposed, that that should help you understand what the loss is that's trying to be addressed by the statute itself. I think it informs... Those cases all speak to the broad proposition that compensation for belated receipt of funds is interest. That is how the court system generally handles the belated receipt of funds, and that's through interest. And Congress addressed that in 2465. And so when we're talking about interest, I mean, we're talking about currency or money, it just doesn't really track that there can be any injury or loss to the currency there. In those cases, I think I'll support that broad proposition. Could there be a temporal aspect, though, in which would suggest there is a loss? What if they had the cash for 25 years or had the cash until the day before the person died? Here's your cash back, and here's the interest, too. Wouldn't that be a tantamount to a loss of the property for that person? It's a difficult hypothetical because there are timeframes for how these things would normally happen. But, no, I think ultimately, under the terms of the statute, it's you get back what you get back. And so if there had come a time, I guess put it this way. So let's say that Mr. Bob prevails in his forfeiture proceeding and says, okay, time to give the money back, government. And the government says, we'll get it to you. And then it takes, like, they can't find it, or for whatever reason, it takes 25 years. I think maybe you could talk your way into saying, well, that's kind of a loss of property because they couldn't produce it when they were required to produce it. And so that would make some sense in that regard, I think, but not in this regard. And partly this is a special case because of the unusual posture of the case below. But I think that, you know, just to turn back to the text for a moment, there are really three aspects of the text that really inform the analysis here. The first, and I think this is maybe not disputed now, but that the, what I might call the off-property clause, the off goods, merchandise, or other property, that clause modifies both the word injury and the word loss. And I don't think there's any question about that now. It must be that way. It tracks the language in 1346b1, which talks about injury or loss of property, and distinguishes that from personal injury. So if off-property doesn't modify injury in 1346b1, and it's just kind of a freestanding sense of injury that maybe is actionable, then there's no reason to have a separate provision for personal injury in 1346b1. And it's really just, like, a very simple sort of series qualifier, like laws, treaties, and constitution of the United States. So you carry that back to injury. So it definitely modifies injury. And then the second textual provision that informs our analysis, as Judge Porter referred to earlier, is the while in possession clause. Because what's implicit in that clause is while the injured or lost property is in possession of the government. And there's no other sensible way to read that text. Well, I think no one's disputing that. The question is, does it have to be the property that's injured or lost, or, as your friend on the other side says, can it be that the loss is to the plaintiff while the property is in your possession? Right. And I think, you know, as Judge Bibas was saying, that your Honor was saying, that, first of all, it's not what the text says, right? There's no reference to the plaintiff's rights in the property in the statute or the plaintiff's loss of use of the property. It talks about the property's injury, right? It's a property injury. If the point is, what does it help you to say while in the possession of, if the injury could be to the person as well as to the property? Because their point is, well, we were injured while it was in your possession. That's the whole point. It was in your possession and not in my possession, and that's the injury. Right. Mr. Baugh was injured while the property was in the possession of the government. I'm trying to figure out, you know, at some point we'll have to write this up. From your perspective, you're saying, well, one of the reasons that we win is because this phrase, while in possession, is doing work. And I'm trying to understand, what work is it doing for you if it helps the other side just as much as it helps you? Because you have to keep resorting back to, no, no, it's injury to him. In other words, that seems to me a separate point from while in the possession of. That seems to be the point of injury of the goods as opposed to injury of the plaintiff, not while in possession. Are you understanding what I'm asking? I think I'm tracking you. I mean, I would say that while in possession does two things. First, it answers the point I was just making, which is that a property modifies injury in addition to loss. That's separate from while in possession. I'm trying to understand what extra work and what further yardage you're getting out of saying while in possession, because they say while in possession works for us too. That's our very argument. It's in your possession, not in my possession. That's what's hurting me. How does while in possession of the government do some extra thing that's not already being done by the prepositional phrase of the goods? Right. I hope I'm tracking you entirely here. If you're not tracking me, I'm sure you're not alone. Okay. The injured or lost property must be what's in possession of the government. Mr. Baugh's claim, such as any property that it's based on, is say the injury to his goodwill with his customers, right? If we think of that as property, and he's making a claim for injury to that property. That's not in your possession. That was not in our possession. Exactly. Right. That's what I'm saying. And then the last aspect of the text, which is really the same thing, so I'll just state it briefly, is that those subsections 1 through 3 that follow, those do the same work, right? Because the first requirement there is that the property has been seized for forfeiture. And the only property that can be referred to there is the injured or lost property on which a claim must be based. And, again, his goodwill, et cetera, was not seized for forfeiture. The last thing I want to mention is just to touch briefly on the legislative history to the extent there is any ambiguity in the statute. We don't believe there is. We think this can be answered based on the plain text of the statute here. But the legislative history is really overwhelming and it's consistent, right? And throughout the legislative history, the entire – it took a long – oh, I'm sorry, I'm at the expiration of my time. You are. And we've got your briefing on the legislative history. Okay. We understand that. Judge Booth? Nothing else. All right. Thank you very much, Mr. Jones. We appreciate it. Ms. Belzo, we'll have you back on rebuttal. Thank you. Thank you, Your Honor. On Section 2465, so that provision governs suits where the government has brought lawsuits against seized property and it governs the relief available to successful claimants there. But it doesn't nullify 2680C and it doesn't on its face limit recovery for currency to 2465. We know that 2680C provides for different recoveries separate and apart from 2465 because even the government admits that in instances where your property was actually damaged, so the rusty boat example, you would separately be able to recover under 2680C. So the question really isn't about whether 2465 exists for currency. It's about whether the damages that we've alleged fall within 2680C. But I also want to return to the point on scope that we talked about when I was up here the first time and that reversing won't swallow the detention exception entirely. There are really meaningful guardrails here. So, for example, the C1 through 4 requirements ensure that the rewaiver allows only property owners who have never been convicted of a qualifying crime and who never forfeited their property to actually bring claims. Those are real limitations. In some of the cases cited by the government, you know, plaintiffs didn't fall within those categories. So, for example, in Smoke Shop, the court ruled that the property hadn't been seized for the purposes of forfeiture. Well, we thought that was true, that it wouldn't affect a full swallowing of the detention exception. Does that meet the other arguments that have been made, though, of the goods argument, which Mr. Jones just went through, the while in possession of the government arguments? Those are textual arguments that are not met by the assertion you're making about, hey, we're not overreaching here. Am I right? That's true. But as we've argued, the plain text of the statute does encompass the type of injury or loss suffered by Mr. Baugh. All right. All right. Thank you very much. I appreciate your representation, Mr. Baugh. The case has been well-briefed and well-argued. We are grateful for that. We've got the matter under advisory.